UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

SHAWN WOODWARD,

                         Plaintiff,

      v.                                               9:18-CV-0083
                                                             (DNH/DJS)

JOHN DOE #1, Correctional
Officer; Greene Correctional
Facility, JOHN DOE #2, Correctional
Sergeant; Greene Correctional
Facility, and JOHN DOE #3, Correctional
Officer; Greene Correctional Facility,

                         Defendants.

---

APPEARANCES:                                        OF COUNSEL:

SHAWN WOODWARD
Plaintiff, pro se
00-A-6563
Washington Correctional Facility
Box 180
72 Lock 11 Lane
Comstock, NY 12821

HON. LETITIA JAMES                         MELISSA A. LATINO, ESQ.
New York State Attorney General - Albany
The Capitol
Albany, NY 12224

DAVID N. HURD
United States District Judge

## DECISION and ORDER

## I. INTRODUCTION

      Pro se plaintiff Shawn Woodward ("Woodward" or "plaintiff") commenced this action by filing a civil rights complaint pursuant to 42 U.S.C. § 1983 ("Section 1983"), together with an application to proceed in forma pauperis. Dkt. No. 1 ("Compl."); Dkt. No. 10 ("IFP

Application").

In the complaint, Woodward set forth claims arising out of his confinement in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS") at Greene Correctional Facility ("Greene C.F."). *See generally,* Compl.

By Decision and Order filed on February 8, 2018 (the "February Order"), Woodward's IFP Application was granted. Dkt. No. 4. After reviewing the complaint in accordance with 28 U.S.C. § 1915(e)(2)(B) and 28 U.S.C. § 1915A(b), the Court found that plaintiff's Eighth Amendment excessive force and retaliation claims against John Doe #1 and failure to protect claims against John Doe #2 and John Doe #3 survived sua sponte review and required a response.[1] *See generally,* Dkt. No. 4.

Pursuant to *Valentin v. Dinkins*, 121 F.3d 72 (2d. Cir. 1997) (per curiam), in order to assist Woodward in identifying the John Doe defendants, the Court requested that the Office of the Attorney General attempt to ascertain the full names of the John Doe defendants. Dkt. No. 4 at 12-13. The Attorney General's Office was also requested, to the extent that it was able to identify either of the John Doe defendants, to provide the addresses where the defendants might be served.[2] *Id*.

On December 10, 2018, after several motions, appeals, and requests for extensions of time by both parties, the Attorney General's Office provided Woodward with information regarding the identities of the John Doe defendants included in the complaint. Dkt. No. 26.

---

[1] The Court dismissed Plaintiff's First Amendment religious claims and claims against defendants Inmate John Doe #4 and Inmate York. Dkt. No. 4 at 6.

[2] The Attorney General's Office was advised that it need not undertake to defend or indemnify these individuals at this juncture. The February Order was intended merely to provide a means by which Plaintiff may name and properly serve the defendants as instructed by the Second Circuit in *Valentin.*

Presently under consideration is Woodward's amended complaint. Dkt. No. 28 ("Am. Compl."). Plaintiff also filed a motion for a "permanent injunction."[3] Dkt. No. 25.

## II. REVIEW OF AMENDED COMPLAINT

The legal standard governing the dismissal of a pleading for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B) was discussed at length in the February Order and it will not be restated in this Decision and Order. *See* Dkt. No. 4 at 2-4.

Taking into account Woodward's pro se status, the Court construes the allegations in the amended complaint with the utmost leniency. *See*, *e.g.*, *Haines v. Kerner*, 404 U.S. 519, 521 (1972) (holding that a pro se litigant's complaint is to be held "to less stringent standards than formal pleadings drafted by lawyers.").

The facts asserted in the amended complaint are identical to those pleaded in the original Complaint. *Compare* Compl. *with* Am. Compl. On May 12, 2017, Woodward and three other inmates were transferred to Greene C.F. to attend mediation/settlement conferences. Am. Compl. at 4. Plaintiff brought his legal work, his Holy Qur'aan, and his prayer rug with him to Greene C.F. *Id*.

The three inmates that accompanied Woodward received their property and were escorted to the A-1 Dorm. Am. Compl. at 4. When plaintiff was called to the Property Room, defendant Correctional Officer J. Gori ("Gori")[4] gave him one pair of underwear, a t-shirt, and socks. *Id.* When Plaintiff inquired about his property, Gori used expletives and told plaintiff to "[p]ut a claim in or sue me." *Id*. Plaintiff verbally complained to defendant Sergeant

---

[3] The Attorney General's Office responded to the motion and stated that since none of the Defendants have been served, the Office does not represent any party. Dkt. No. 27.

[4] The Clerk of the Court is directed to substitute Gori for John Doe #1.

3

Geleta ("Geleta")[5]. *Id*. In response, Geleta told Gori that Plaintiff was "snitching." Am. Compl. at 4.

While Woodward was seated on a bench, Gori, without provocation and in the presence of Geleta, defendant Correctional Officer K. Cituk ("Cituk"),[6] and two inmates, grabbed Plaintiff by the throat, choked him, and punched him on the left side of his head. Am. Compl. at 4-5. When Plaintiff attempted to defend himself, the inmates restrained Plaintiff and prevented him from getting off the bench. *Id*. at 5. Geleta then asked Plaintiff if he wanted to sue them. *Id*. Plaintiff responded, "no" and Geleta stated, "[a]fter you go to court Monday, [ ] [m]ake sure you don't have to come back or you will never leave Greene's SHU-200." *Id*. As a result of the attack, Plaintiff sustained pain in his neck and a headache. Am. Compl. at 5. Plaintiff suffered from a sore neck until May 13, 2017. *Id*. Plaintiff was escorted to the A-1 Dorm. *Id*. at 4-5.

When Woodward arrived at the A-1 Dorm, he asked an officer to sweep an area so that he could pray. Am. Compl. at 5-6. When the officer refused, Plaintiff asked for an extra sheet or blanket so that he could pray. *Id*. at 6. The officers told Plaintiff to abandon his prayers or use his state issued linen. *Id*. Because Plaintiff was not provided with a clean surface to pray, he had to abandon all prayers while confined at Greene C.F. *Id*.

Woodward seeks monetary damages. Am. Compl. at 7.

**A. Previous Claims**

As a result of the review of the original Complaint, the Court held that Woodward's

---

[5] The Clerk of the Court is directed to substitute Geleta for John Doe #2.

[6] The Clerk of the Court is directed to substitute Cituk for John Doe #3.

4

Eighth Amendment excessive force claim and retaliation claim against John Doe #1 required a response. With the Amended Complaint, plaintiff repeats those claims and substitutes Gori for the unidentified defendant. Accordingly, the Court finds that the excessive force and retaliation claims against Gori survive sua sponte review and require a response.

As a result of the review of the original complaint, the Court held that Woodward's Eighth Amendment failure to intervene claims against John Does #2 and #3 also required a response. With the amended complaint, plaintiff repeats those claims and substitutes Geleta and Cituk for the unidentified defendants. Accordingly, the Court finds that the failure to intervene claims against Geleta and Cituk survive sua sponte review and require a response.

### B. First Amendment Religious Claims

With the amended complaint, Woodward realleges his First Amendment religious claims against Gori with additional factual allegations.

The law related to First Amendment religious claims was discussed in the February Order and will not be restated herein. *See* Dkt. No. 4 at 7-8. In the February Order, the Court dismissed the First Amendment claims holding:

> Woodward's complaint lacks any facts related to when or, for how long, plaintiff was deprived of his Holy Qur'aan and/or prayer rug. The complaint contains vague accusations with unspecified dates, times, and facts suggesting establishing how plaintiff was burdened. These allegations, without more, fail to plausibly suggest that defendant burdened plaintiff's right to freely practice his religion.

Dkt. No. 4 at 8.

In the amended complaint, Woodward attempts to correct the deficiencies in this claim. Am. Compl. at 6. Since 2000, plaintiff has been a practicing Muslim. *Id*. at 5. Plaintiff

5

alleges that the Holy Qur'aan is sacred, akin to the Bible or Torah, and that to "ensure compliance with Muslim teachings," he was required to read a portion of the Holy Qur'aan after each of his five daily prayers. *Id*. Accordingly, plaintiff alleges that Gori violated his First Amendment religious rights when he "intentionally destroyed" plaintiff's Prayer Rug and Holy Qur'aan leaving him with no means to pray or read. *Id*. at 6.

At this juncture, Woodward has alleged sufficient facts suggesting that Gori's conduct constituted a substantial burden on his sincerely held religious beliefs. Accordingly, Gori is directed to respond to the First Amendment claim.

## III. **MOTION FOR PERMANENT INJUNCTION**

Woodward also moves for a permanent injunction preventing DOCCS from transferring plaintiff to Greene C.F. Dkt. No. 25 at 3.

The standard for a permanent injunction is essentially the same as the standard for a preliminary injunction, except that the moving party, instead of showing a *likelihood* of success on the merits must show *actual* success on the merits. *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n. 12 (1987) (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 392 (1981)).

Preliminary injunctive relief "is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Moore v. Consol. Edison Co. of N.Y.*, 409 F.3d 506, 510 (2d Cir. 2005) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). "The district court has wide discretion in determining whether to grant a preliminary injunction." *Id.* at 511.

To succeed on a motion for preliminary injunctive relief, a plaintiff must demonstrate

6

irreparable harm and either a substantial likelihood of success on the merits of the claim, or sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in his favor. *Citigroup Global Markets, Inc. V. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010).

However, when the moving party seeks a "mandatory preliminary injunction that alters the status quo by commanding a positive act," the burden is even higher. *Cacchillo v. Insmed, Inc.*, 638 F.3d 401, 405-06 (2d Cir. 2011). "A mandatory preliminary injunction 'should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.' " *Id.* (quoting *Citigroup*, 598 F.3d at 35 n.4).

The alleged violation of a constitutional right generally satisfies a plaintiff's burden to demonstrate irreparable harm. *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996). However, "[i]rreparable harm is injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *N.Y. ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 660 (2d Cir.), *cert. dismissed sub nom. Allergan PLC v. N.Y. ex. rel. Schneiderman*, 136 S. Ct. 581, 193 L. Ed. 2d 421 (2015) (citation and internal quotation marks omitted).

Furthermore, "[t]o prevail on a motion for preliminary injunctive relief, the moving party must establish a relationship between the injury claimed in the motion and the conduct giving rise to the complaint." *Candelaria v. Baker,* No. 00-CV-0912, 2006 WL 618576, at *3 (W.D.N.Y. Mar. 10, 2006) (citations omitted)*; see also Allen v. Brown*, No. 96-CV-1599 (RSP/GJD), 1998 WL 214418, at *4 (N.D.N.Y. Apr. 28, 1998) (denying request for injunctive

relief where allegations in application for such relief were unrelated to claims asserted in the complaint and thus plaintiff "failed to establish either a likelihood of succeeding on the merits of his underlying claim, or sufficiently serious questions going to the merits of such claim and a balance of hardships tipping decidedly toward" the plaintiff).

"In the prison context, a request for injunctive relief must always be viewed with great caution so as not to immerse the federal judiciary in the management of state prisons." *Fisher v. Goord*, 981 F. Supp. 140, 167 (W.D.N.Y. 1997) (citing *Farmer v. Brennan*, 511 U.S. 825, 846-47 (1994)) (other citations omitted).

Here, the injunction sought is mandatory, and thus the Court will use the "clear and substantial" showing of a likelihood of success standard. Woodward moves for an order preventing DOCCS from transferring him to Greene C.F. Dkt. No. 25 at 3. Plaintiff alleges "DOCCS' employees" attempted to transfer him on November 26, 2018, to Greene C.F. *Id*. Plaintiff refused and, as a result, was transferred to the Special Housing Unit ("SHU") at Ulster Correctional Facility ("Ulster C.F."). *Id*. While he was housed at Ulster C.F. when he filed the motion, plaintiff is presently incarcerated at Washington Correctional Facility ("Washington C.F."). Dkt. No. 29.

As discussed *supra*, the remaining defendants are Gori, Geleta, and Cituk. To the extent that Woodward seeks injunctive relief against entities that are not defendants in this action, injunctive relief is available against non-parties only under very limited circumstances, none of which are present here. *See* Fed. R. Civ. P. 65(d)(2); *Doctor's Associates, Inc. v. Reinert & Duree, P.C.*, 191 F.3d 297, 302-03 (2d Cir. 1999); *United States v. Regan*, 858 F.2d 115, 120 (2d Cir. 1988); *see also In re Rationis Enterprises, Inc. of Panama*, 261 F.3d

264, 270 (2d Cir. 2001) ("A court may not grant a final, or even an interlocutory, injunction over a party over whom it does not have personal jurisdiction.").

Additionally, an inmate does not have a right to be confined to the prison of his own choosing. *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *see also Alexander v. Deming,* No. 03-CV-0147, 2009 WL 1044561, at *11 (W.D.N.Y. April 16, 2009) (holding that the Court lacks the authority to order that an inmate be imprisoned in any particular facility).

Therefore, there is no legal basis for this Court to order the relief requested. Moreover, defendants have not yet answered, and, indeed, have not even been served. Accordingly, the Court cannot ascertain Woodward likelihood of success or whether he has otherwise met the standard for issuance of permanent injunctive relief. For the foregoing reasons, plaintiff's motion for injunctive relief is denied.

## IV. **CONCLUSION**

Therefore, it is

ORDERED that

1. The amended complaint (Dkt. No. 28) is accepted for filing and is deemed the operative pleading;

2. The Clerk of the Court shall (i) revise the docket to reflect that Gori, Geleta, and Cituk are defendants in this action; and (ii) revise the docket to reflect that John Does #1, #2, and #3 are no longer defendants in this action;

3. The following claims survive review and require a response: (1) Eighth Amendment excessive force claim against Gori; (2) Eighth Amendment failure-to-intervene claims against Geleta and Cituk; (3) First Amendment retaliation claim against Gori; and

(4) First Amendment religious claim against Gori;

    4.  The Clerk shall issue summonses and forward them, along with copies of the Amended Complaint, to the United States Marshal for service upon the defendants;

    5.  The Clerk shall forward a copy of the summonses and Amended Complaint to the Attorney General's Office, together with a copy of this Decision and Order;

    6.  A response to the Amended Complaint be filed by the defendants or their counsel, as provided for in the Federal Rules of Civil Procedure;

    7.  All pleadings, motions and other documents relating to this action must bear the case number assigned to this action and be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367;

    8.  **Any paper sent by a party to the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of same was served on all opposing parties or their counsel.  Any document received by the Clerk or the Court which does not include a proper certificate of service will be stricken from the docket**;

    9.  Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action;

    10.  All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions;

    11.  **Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel, in writing, of any change in his address; their failure to do so will result in the dismissal of his action**;

10

12. Plaintiff's motion for a permanent injunction (Dkt. No. 25) is **DENIED**; and

13. The Clerk of the Court shall serve a copy of this Decision and Order on Plaintiff in accordance with the Local Rules.

IT IS SO ORDERED.

Dated: January 24, 2019
       Utica, New York.

_____
United States District Judge